UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Nike, Inc., | ) |
|                                Plaintiff, | ) Case No.: 1:21-cv-03199 |
| v. | ) Hon. Judge Charles R. Norgle |
| The Partnerships, and Unincorporated Associations Identified on Schedule "A", | ) Magistrate Judge Jeffrey Cole |
|                               Defendants. | ) |

**Motion to Vacate Default Judgment**

**NOW COMES** defendant THDa ("Defendant"), by and through its undersigned counsel, and hereby move this Court to vacate the default judgment entered against Defendant and if not dismiss them, then allow Plaintiff's case against it proceed on the merits.

**I.**    **Background and Procedural History**

Plaintiff filed the complaint on July 15, 2021, alleging trademark infringement and counterfeiting and false designation of origin. [Dkt. 1]. A temporary restraining order [Dkt. 23] was entered on June 17, 2021 permitting Plaintiff to complete service of process to Defendant pursuant to Federal Rule of Civil Procedure 4(f)(3) by electronically publishing a link to the Complaint, Summons and other relevant documents on a website and by sending an e-mail to the e-mail addresses identified in Exhibit 3 to the Declaration of Joe Pallett and any email addresses provided for Defendants by third parties that includes a link to said website. [Dkt.30-1 pg. 1]. Despite Plaintiff attesting to having sent them, Defendant did not in fact receive the purported service of process emails. Declaration of Wang Huixin ¶ 3. Default Judgment was entered on August 24, 2021, awarding Plaintiff $500,000 in statutory damages pursuant to 15 U.S.C. § 1117(c)(2). [Dkt. 48, 49].

## II. Argument

### a. Legal Standard

The Seventh Circuit has a "well-established policy favoring a trial on the merits over a default judgment." Gersbacher v. Larsen, 1991 WL 18425, at *1 (N.D. Ill. Feb. 5, 1991). Federal rules provide that the Court may vacate a default judgment due to reasons of "mistake, inadvertence, surprise, or excusable neglect" so long as such relief is requested sooner than one (1) year after the entry of the judgment. Fed. R. Civ. P. 60(b)(1), (c). In the Seventh Circuit, a defaulting party seeking to vacate a judgment on this basis bears the burden of showing that the default judgment resulted from mistake, inadvertence, surprise or excusable neglect and that they have a meritorious defense. Passarella v. Hilton Int'l Co., 810 F.2d 674, 676 (7th Cir. 1987). Because default judgments are harsh, it is appropriate for the Court to liberally apply Rule 60(b)(1) to parties seeking relief therefrom "where those judgments result from honest mistakes rather than willful misconduct, carelessness or negligence." Ellingsworth v. Chrysler, 665 F.2d 180, 185 (7th Cir. 1981); Anilina Fabrique de Colorants v. Aakash Chemicals & Dyestuffs, Inc., 856 F.2d 873, 879 (7th Cir.1988) (courts must generally grant relief from a default judgment when "the moving party acts with reasonable promptness, alleges a meritorious defense to the action, and where the default has not been willful."). Resolution of a case on its merits is especially true where the judgment involves large sums of money, as it does in this case. Id. (vacating a default judgment of $175,000).

Alternatively, the Court may vacate a default judgment where the judgment is void. Fed. R. Civ. P. 60(b)(4); Bally Exp. Corp. v. Balicar Ltd., 1985 WL 2006, at *1 (N.D. Ill. July 3, 1985), *citing*, Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica, 614 F.2d 1247, 1255 (9th Cir. 1980). While the grant of relief under Rule 60(b) is generally an extraordinary remedy, where a judgment is void, the Court has a non-discretionary duty to grant relief therefrom, irrespective of any delay on the part of the defendant. Bally Exp. Corp.; Philos Techs., Inc. v. Philos

& D, Inc., 645 F.3d 851, 857 (7th Cir. 2011), *citing*, Taft v. Donellan Jerome, Inc., 407 F.2d 807, 808 (7th Cir. 1969); Pacurar v. Hernly, 611 F.2d 179, 181 (7th Cir. 1979) (noting that, in regard to motions under Rule 60(b)(4), the reasonable time limitation in Rule 60 (c)(1) must generally mean no time limit, at least absent exceptional circumstances) (internal quotations omitted).

**b. The Default Judgement should be vacated pursuant to Rule 60(b)(4) because it is void because Plaintiff has failed to effect proper service of process on Defendant.**

Every defendant must be served with a copy of the complaint and summons in accordance with Rule 4. Fed R. Civ. P. 4(c)(1). Only proper service vests a district court with personal jurisdiction over a defendant. Cardenas v. City of Chicago, 646 F. 3d 1001, 1005 (7th Cir. 2011). Actual knowledge of the existence of a lawsuit, alone, "is insufficient to confer personal jurisdiction over a defendant in the absence of valid service of process." Mid-Continent Wood Prods., Inc. v. Harris, 936 F.2d 297, 301 (7th Cir. 1991). A judgement is void if the defendant was not properly served with process. Lefevre v. Concord Servicing Corp., 2000 WL 45457, at *2 (N.D. Ill. Jan. 11, 2000), *citing*, Printed Media Services, Inc. v. Solna Web, Inc., 11 F.3d 838, 843 (8th Cir. 1993). Courts repeatedly have vacated default judgments where service of a complaint was improper. *See*, Dyno, LLC v. Se. Asia Direct, Ltd., 2012 WL 130087, at *3 (N.D. Ill. Jan. 13, 2012) (setting aside default judgment because service upon a corporation's attorney, who was neither an officer or agent of defendant, was improper); KTM AG, v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto, 21-cv-02732 [Dkt. 82] (vacating default judgment where Plaintiff failed to effect service of process as provided under the TRO) (J. Ellis); Annuity Plan of the Int'l Union of Operating Eng'rs Local No. 649 v. DEM/EX Grp., 2008 WL 4491951, at *1-2 (C.D. Ill. Oct. 2, 2008) (default judgment void where service upon corporation's president, who not a registered agent or otherwise authorized to accept service, was improper); Guess ?, Inc. v. Chang, 163 F.R.D. 505, 508 (N.D. Ill. 1995) (vacating

default judgment where complaint was served upon an attorney who plaintiff had never authorized to accept service). Taking advantage of Federal Rule Civil Procedure 4(f)(3), Plaintiff has attempted to serve the defendants in bulk using email processes. However, this method of service violates the express wording of Rule 4(f)(3), as interpreted in light of international agreements. Plaintiff has not served Defendant as required under Federal Rules or international agreement and, for this reason, the default judgement should be vacated and Defendant should be dismissed.

### i. The Hague Convention is an international agreement that, where applicable, limits court-ordered methods of service under Fed R. Civ. P. 4(f)(3).

Rule 4(f) governs service of process to an individual and provides that "an individual … may be served at a place not within any judicial district of the United States…by other means *not prohibited by international agreement*, as the court orders." Fed. R. Civ. P. 4(f)(3) (emphasis added). The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 (the "Hague Convention") is such an international agreement as stated in Rule 4(f)(3). **Exhibit 1**. The Supreme Court, Federal Circuit Courts, and District Courts had repeatedly and uniformly held that the Hague Convention, where applicable, limits court-ordered methods of service under Rule 4(f)(3) and compliance with the Hague Convention is mandatory wherever it applies. Water Splash Inc. v. Menon, 137 S.Ct. 1504, 1507 (2017)( "the Hague…Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service wherever it applies."); Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 705 (1988)("[C]ompliance with the Convention is mandatory in all cases to which it applies."); Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004) (Reviewing method of service under Rule 4(f)(3) only after deciding that the Hague Convention does not prohibit the method, and holding "[b]ecause service of process was attempted abroad, the

validity of that service is controlled by the Hague Convention, to the extent that the Convention applies); Rio Properties, Inc. v. Rio Intern. Interlink, 284 F.3d 1007, 1015 n.4 (9th Cir. 2002) ("A federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention ..."); Ackermann v. Levine, 788 F.2d 830, 838 (2nd Cir. 1986) ("Service of process must satisfy both the statute under which service is effectuated and constitutional due process. The statutory prong is governed principally by the Hague Convention."); Sulzer Mixpac AG v. Medenstar Indus. Co., 312 F.R.D. 331, 331-332 (N.Y.S.D. 2015) (analyzing Rule 4(f)(3) service in light of the requirement of the Hague Convention); Richmond Techs., Inc. v. Aumtech Bus. Sols., 2011 WL 2607158, at *12 (N.D. Cal. July 1, 2011) ("The question in this case is whether service of the Indian Defendants by substituted service on their attorney under Rule 4(f)(3) comports with the Hague Convention.").

More importantly, as a ratified treaty, the Hague Convention's application to Rule 4(f)(3) is required by the U.S. Constitution. *See* U.S. Const. Art. VI, cl. 2; *See also,* Ackermann ("As a ratified treaty, the Convention is of course the supreme law of the land."). In contrast, where the Hague Convention does *not* apply, courts have held that service of process via publication and email were sufficient. *See e.g.*, Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217 (S.D. N.Y. 2003) (holding that service of process by publication was allowed, disregarding the Hague Convention requirements as Afghanistan was not a signatory thereto); In re Int'l Telemedia Assocs., Inc., 245 B.R. 713 (Bankr. N.D. Ga. 2000) (holding service of process by email allowed and the Hague Convention requirements inapplicable as defendants had no known address).

### ii. The Hague Convention is applicable to the Defendant's service of process.

The Hague Convention applies only when certain conditions are met. First, both the origination State and the destination State of the document must be contracting states to the Hague Convention. *See*, Int'l Controls Corp. v. Vesco, 593 F.2d 166, 178 (2nd Cir. 1979) (holding

the Hague Convention not applicable as the destination State Bahamas was not a signatory). Second, there must be occasion to transmit a judicial or extrajudicial document for service abroad. Third, the defendant's address must be known. *See*, the Hague Convention, Art. 1 ("The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad. This Convention shall not apply where the address of the person to be served with the document is not known.")

For Defendant, all conditions are met. First, both the United States and China are signatories to the Hague Convention. **Exhibit 1**. Second, there was occasion to transmit a judicial document for service abroad, because Defendant has no place of business or agent receiving process in the United States. Huixin Decl. ¶ 9. Third, the Defendant's address was on its Amazon.com storefront and made known to Plaintiff prior to it attempting to effect services of process. Id.; **Exhibit 3** p. 4. This address was also valid and authentic, and any mail bearing the address can successfully reach the Defendant. Id. Accordingly, the Hague Convention thus applies to Plaintiff's attempt to serve Defendant with process in this action.

### iii. The Hague Convention prohibits Plaintiff's method of service of process.

The Hague Convention enumerates several permitted methods of service and prohibits all which are not enumerated. The Supreme Court and several Circuit have repeatedly confirmed this reading. In Water Splash Inc. and Volkswagenwerk, the Supreme Court stated that "the Hague…Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." Water Splash Inc., at 1507; Volkswagenwerk, at 699. It also states that "compliance with the [Hague] Convention is mandatory in all cases to which it applies." Volkswagenwerk, at 705. The Second Circuit and Ninth Circuit also have followed the rule that the method of service abroad must be permitted under a specific article of the Hague Convention. *See*, Ackermann (holding service of process by registered mail valid only after finding that Hague Convention Article 8 and Article 10 specifically permitted it); Brockmeyer (holding

service of process by mail valid only after finding Hague Convention article 10(a) specifically permitted it). Plaintiff cannot identify which specific article of the Hague Convention permits its service of process by a combination of website publication and email notice. Specifically, the Hague Convention permits only the following methods of service, consisting of service by central authority (Article 2-7), by diplomatic and consular agents (Article 8-9), by mail or through judicial official of the State of destination if the destination State does not object (Article 10), by methods allowed by other international agreement (Article 11), and by other means as allowed by the internal laws of the destination State (Article 19). **Exhibit 1**; *See also*, Water Splash Inc., at 1508 (reviewing the permitted methods of service).

In the present case, service by publication is not permitted by any enumerated method of service under the Hague Convention. Specifically, Plaintiff's method of service does not fall under Article 11 because U.S. and China do not otherwise have a treaty on the service of process. The method of service also does not fall under Article 19, as China's internal laws prohibit service by email or website publication unless a plaintiff has exhausted other means of service. **Exhibit 2** (Excerpts of Civil Procedural Law of the People's Republic of China (Amended in 2017), including relevant Articles 87 and 92, is published and translated by Wolters Kulwer). Plaintiff's method of service also clearly does not fall under Article 2-9 of the Hague Convention (*i.e.*, service by central authority or by consular agents). **Exhibits 1, 2**. Because Plaintiff's method of service was not *permitted* by the Hague Convention, it was thus *prohibited* by the Hague Convention and consequently insufficient under Rule 4(f)(3).

    c. **Additionally, and alternatively, the Default Judgement should be vacated pursuant to Rule 60(b)(4) because it is void as a result of insufficient service of process.**

On June 17, 2021, the Court granted Plaintiff's request for leave to serve the defendants

electronically. [Dkt. 23]. Plaintiff's counsel certified that on July 12, 2021, he "sent an email containing to the e-mail addresses identified in Exhibit 3 to the Declaration of Joe Pallett and any e-mail addresses provided for defendants by third parties that includes a link to said website" [Dkt. 30-1 pg. 2]. However, Defendant's email accounts did not receive such summons email. Huixin Decl. ¶ 3, Ex. A.

Plaintiff failed to effect service of process as provided under the TRO and as Plaintiff certified. [Dkts. 23, 30-1 ¶ 4]. Absent proper service of process, this Court has no jurisdiction over Defendant, the default judgment against it is void and should be lifted, and the Defendant should be dismissed. Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) ("Service of process…is fundamental to any procedural imposition on a named defendant. In the absence of service of process…a court ordinarily may not exercise power over a party the complaint names as defendant"); Homer v. Jones-Bey, 415 F.3d 748, 753 (7th Cir. 2005), *citing*, United States v. Indoor Cultivation Equip. From High Tech Indoor Garden Supply, 55 F.3d 1311, 1317 (7th Cir.1995) ("If the underlying judgment is void, it is a per se abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)."); *See*, Bacino v. American Federation of Musicians, 407 F. Supp. 548, 555 n.9 (N.D. Ill. 1976) (case dismissed for insufficient service of process because venue would appear inappropriate).

### d. Alternatively, the Default Judgment may be set aside due to Defendant's excusable neglect pursuant to Rule 60(b)(1).

The Supreme Court has defined "excusable neglect" as "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." Sullivan v. Gen. Plumbing, Inc., 2007 WL 1030236, at *3 (N.D. Ill. Mar. 31, 2007), *citing*, Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 388 (1993). The Seventh Circuit adopts a more limited definition of "excusable neglect" for Rule 60(b)(1) purposes, which "requires something more compelling than

ordinary lapses of diligence or simple neglect to justify disturbing the judgment. Coyote Logistics, LLC v. AMC Cargo Inc., 2017 WL 1862642, at *2 (N.D. Ill. May 9, 2017), *citing*, Jones v. Phipps, 39 F.3d 158, 162 (7th Cir. 1994); *Compare*, Laguna Royalty Co. v. Marsh, 350 F.2d 817, 823 (5th Cir. 1965); Rosebud Sioux Tribe v. A&P Steel, Inc., 733 F.2d 509, 515 (8th Cir. 1984) (stating that Rule 60 is meant to ensure that justice is served, and that courts must not allow a judgment to further injustice); Shores v. Sklar, 885 F.2d 760, 766 (11th Cir. 1989); TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691 (9th Cir. 2001) (stating that excusable neglect may be based on a defendant's "credible good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking [sic], or otherwise manipulate the legal process," and will not be found to be intentional). Generally, a defendant seeking to vacate a default judgment under Fed. R. Civ. P. 60(b)(1) has the burden of establishing: "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." Wehrs v. Wells, 688 F.3d 886, 890 (7th Cir. 2012).

### i. Good cause exists for Defendant's default.

Defendant did not understand the nature of the case at the onset and at no point did Defendant intend to avoid the current litigation. Huixin Decl. ¶4. This can be contrasted with what has been described as the "theme running through the case law" of default judgments being left intact: "[w]here it appears that the defaulting party has willfully chosen not to conduct its litigation with the degree of diligence and expediency prescribed by the trial court." C.K.S. Engineers, Inc. v. White Mountain Gypsum Co., 726 F.2d 1202, 1205 (7th Cir. 1984) (collecting cases).

The standard for demonstrating good cause is "justifiably vague" and the Court has "great latitude" to discern if good cause exists. Phipps, 29 F.3d at 164; *See*, Baker v. Optionit, Inc., 2015 WL 9182584, at *2 (N.D. Ill. Dec. 17, 2015) (good cause for defendant's failure to respond included lack of actual notice); *See also*, Summit Fin. Res. L.P. v. Big Dog Enterprises Logistics, LLC, 2008

WL 687279, at *2 (S.D. Ill. Mar. 12, 2008) (finding good cause where defendant's internal process lost the complaint). Defendant demonstrates that it has not "willfully refus[ed] to litigate the case properly," and upon the Court's examination it can find that good cause exists to vacate the Default Judgment. *See*, Comerica Bank v. Esposito, 215 F. App'x 506, 508 (7th Cir. 2007).

### ii. Defendant responded reasonably to address the default judgement.

While Rule 60(b) sets a one-year time limit on bringing a motion to vacate a default judgement, a defendant does not comply with Rule 60(b) simply by filing its motion within that absolute limitation - the delay must also be reasonable. Kagan v. Caterpillar Tractor Co., 795 F.2d 601, 610 (7th Cir. 1986). The determination of what is reasonable includes "the interest in finality, the reason for delay, the practical ability to learn earlier of the grounds relied upon, and prejudice to other parties." Planet Corp. v. Sullivan, 702 F.2d 123, 126 (7th Cir. 1983), *quoting*, Ashford v. Steuart, 657 F.2d 1053, 1055 (9th Cir. 1981).

This Court entered the default judgment on August 24, 2021. [Dkt. 48]. It is now just over eight months since the default judgment order and Defendant has been diligent in addressing the dispute since they became aware of the case on, including obtaining foreign and local counsel and engaging Plaintiff's counsel to explore settlement. Huixin Decl., ¶¶ 5-7; *See*, Philos Techs., Inc. v. Philos & D, Inc., 645 F.3d 851, 856 (7th Cir. 2011) (motion for relief from final judgment for lack of personal jurisdiction was not untimely although it had been filed nearly one year after entry of default judgment.); Cent. Laborers' Pension, Welfare & Annuity Funds v. W.C. Beiser Concrete Co., 2011 WL 1549226, at *2 (S.D. Ill. Apr. 21, 2011) (defendant acted promptly despite waiting approximately four months to move to vacate default). *Cf.*, Simon v. Pay Tel Mgmt., Inc., 952 F.2d 1398 (7th Cir. 1992) (delay not reasonable where motion to vacate filed just short of the one-year limitation); Mayfair Extension, Inc. v. Magee, 241 F.2d 453 (D.C. Cir. 1957) (a delay of 11 ½ months in alleging fraud was held unreasonable when appellant had known of the default for

almost a year); Dominguez v. United States, 583 F.2d 615 (2d Cir. 1978), cert. denied 439 U.S. 1117 (1979) (10-month delay occasioned by counsel's "abysmal neglect" was unreasonable and Rule 60(b) relief would not be granted). Plaintiff will not be harmed in any way if it is forced to litigate now, rather than in August. Plaintiff was undoubtedly prepared to litigate the case and it is highly unlikely that it has lost access to relevant evidence or lost touch with relevant witnesses, particularly considering Plaintiff has identical cases currently pending in this Court.

### iii. Defendant has meritorious defenses to Plaintiff's claims because the "use" of the "Dri Fit" mark constitutes fair use.

A meritorious defense need not, beyond a doubt, succeed in defeating a default judgment, but it must at least "raise[ ] a serious question regarding the propriety of a default judgment and…[be] supported by a developed legal and factual basis." Phipps, 39 F.3d at 165. As set forth above, the default judgment is void as a result of insufficient service of process. Separately, Defendant's "use" of the "Dri Fit" mark was simply descriptive of the product and constitutes fair use. See, Packman v. Chi Tribune Co., 267 F.3d 628, 639 (7th Cir. 2001) (observing that when no likelihood of consumer confusion exists, the defendants are often found to be fair use). Statutory fair use serves as a complete defense to a claim for trademark infringement if the Defendant can show: (i) it did not use the mark as a trademark; (ii) the use is descriptive of its goods; and (iii) it used the mark fairly and in good faith. Packman, 267 F.3d at 639.

#### 1. Defendant did not use "Dri Fit" as a trademark.

Words or phrases are "used" as trademarks" when [they are] used by a source of a product to identify itself to the public as the source of its product and to create in the public consciousness an awareness of the uniqueness of the source and of its products." SportFuel, Inc. v. PepsiCo, Inc., 932 F.3d 589, 596 (7th Cir. 2019) (internal citations omitted). To decide whether a term is being used as a trademark , the Seventh Circuit assesses multiple factors, including: (1) whether the phrase

is used with a company's "house mark"; (2) how prominently it is displayed compared to the house mark; (3) whether the phrase is used on all of its product packaging, or only in certain advertisements; and (4) whether the slogan is "catchy" - that is, whether it is meant to stick in a customer's head and create an association with the source. Id. at 598.

Evaluating these factors, it is clear that Defendant uses "Dri Fit" to describe the type of product it is selling rather than to signify a source of its product. The term "Dri Fit" is only used once in the middle of the listing title and is not displayed any larger or smaller than other words. **Exhibit 3**. This suggests to a reader that it is no more or less important than the rest of the words in the product listing title. See, Milo Enterprises, Inc. v. Bird-X, Inc., 2022 WL 874625 at *6 (N.D. Ill. Mar. 24, 2022) (finding that a phrase that was not displayed any larger or smaller than other words in the product name or description suggested that the phrase was not being used as a trademark). Furthermore, nothing about "Dri Fit" stands out as catchy, playful, rhyming, or rhetorical in a way that is intended to create "a memorable slogan that is uniquely associated with [Milo's] product." Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 954 (7th Cir. 1992). Additionally, Defendant did not print the phrase "Dri Fit" on the actual shirt displayed in the main product image where brands are usually displayed, but rather conspicuously identified "MeetHoo" as the brand in both the first words on the product little listing and the actual shirt as displayed in the main product image. **Exhibit 3**; Huixin Decl. ¶ 8; see Bell v. Harley Davidson Motor Co., 539 F. Supp. 2d 1249, 1258 (S.D. Cal. 2008) (holding that defendant did not used terms as a trademark in part because they did not put allegedly infringing mark on its merchandise where one would expect to find the source-identifiers of a product). Accordingly, the first element weighs in favor of finding fair use.

### 2. Defendant's use of "Dri Fit" was descriptive of its goods.

Phrases are "descriptive" within the meaning of the fair use exception where the term

"names a characteristic of a product or service." Sorensen v. WD-40 Co., 792 F.3d 712, 724 (7th Cir. 2015). Descriptive use of a term is not a trademark violation; "[t]his rule ensures that competitors can market their products by describing them.... [and] reflects that descriptors are a poor means to distinguish among competing products." Uncommon, LLC v. Spigen, Inc., 926 F.3d 409, 420 (7th Cir. 2019) (citations omitted). the test of descriptiveness is "one of consumer perception - how is [the term] perceived by the average prospective consumer?" Sands, Taylor & Wood Co., 978 F.2d at 953 (quotation and emphasis omitted). An average consumer would determine that "Dri Fit" is clearly descriptive of the moisture resistant nature of the product fabric. Accordingly, the second element weights in favor of finding fair use.

### 3. Defendant used the term "Dri Fit" fairly and in good faith,

The good faith element of the fair use defense "look[s] to [the alleged infringer's] subjective purpose in using a slogan." SportFuel, 932 F.3d at 600. Defendant's good faith may be judged "only by inquiry into its subjective purpose in using" the phrase. M. B. H. Enters., Inc. v. WOKY, Inc., 633 F.2d 50, 54 (7th Cir. 1980). "[T]he standard for good faith for fair use…asks whether the alleged infringer intended to trade on the good will of the trademark owner by creating confusion as to the source of the goods or services." Int'l Stamp Art, Inc. v. United States Postal Serv., 456 F.3d 1270, 1274–75 (11th Cir.2006) (citing cases from five other circuits, including the Seventh Circuit). Defendant only used the term "Dri Fit" to describe the product at issue and did not intend to trade on the good will of Plaintiff or create confusion as to the source of the goods or services. Accordingly, all three factors weight in favor of finding fair use. For these reasons, the Default Judgement should be set aside under Fed. R. Civ. P. 60(b)(4).

### III. Conclusion

Intellectual property infringement suits against anonymous and generally-Chinese e-commerce retailers are very common in this District and few would disagree that intellectual

property infringement is a matter that should be aggressively policed. However, this motivation does not excuse a brand-owner, like Plaintiff, from obtaining judicial relief without complying with federal rules or the Court's jurisprudence. The Defendant was not properly before this Court and thus the default and Default Judgment obtained against it should be vacated and the Defendant, if not dismissed, be allowed an opportunity to substantively respond to the Complaint.

Dated: May 9, 2022

                                                     Respectfully submitted,

                                                   /s/Adam E. Urbanczyk
                                                 AU LLC
                                                 564 W. Randolph St. 2nd Floor
                                                 Chicago, IL 60661
                                                 adamu@au-llc.com
                                                 Ph.    (312) 715-7312
                                                 Fax    (312) 646-2501

                                                 *Attorney for Defendant*